UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RONALD DIGANGI, individually and on behalf     :
of all others similarly situated,     :
    :
    Plaintiff,     :     **MEMORANDUM AND ORDER**
    :     13-CV-5627 (DLI)(RLM)
    -against-     :
    :
GOVERNMENT EMPLOYERS INSURANCE     :
COMPANY, GEICO CASUALTY COMPANY,     :
GEICO INDEMNITY COMPANY, and GEICO     :
GENERAL INSURANCE COMPANY,     :
    :
    Defendants.     :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Ronald DiGangi ("DiGangi" or "Plaintiff"), brings this putative class action against Government Employers Insurance Company, Geico Casualty Company, Geico Indemnity Company, and Geico General Insurance Company (collectively, "Defendants" or "GEICO"). The complaint alleges that GEICO breached Plaintiff's automobile insurance policy and violated Section 349 of the New York General Business Law by specifying allegedly inferior auto parts in its repair estimates for damaged vehicles. Defendants move to dismiss all of the claims asserted against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). (Notice of Motion, Doc. Entry No. 8.) Plaintiff opposes. (Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Mem."), Doc. Entry No. 11.) For the reasons set forth below, Defendants' motion is granted due to Plaintiff's failure to state a claim upon which relief may be granted.

## BACKGROUND

The following facts are taken from the complaint and are assumed true solely for purposes of this motion.

On March 8, 2012, Plaintiff's Nissan Maxima was damaged in a collision. (Compl. ¶ 43, Doc. Entry No. 1.) At the time of the collision, Plaintiff was insured under a standard GEICO private passenger automobile insurance policy (the "Policy"). (*Id.* ¶¶ 1, 5.) Plaintiff took his car to a body shop in Oceanside, New York, and he was issued a repair estimate for his car. (*Id.* ¶¶ 43-44.) Based on the repair estimate, GEICO issued Plaintiff a check in the amount of $6,295.02. (*Id.* ¶¶ 1, 46.) Plaintiff elected to have his car repaired with more expensive parts than those used to prepare the estimate. (*Id.* ¶ 47.) Therefore, the cost of repairing his car exceeded the amount of the check Plaintiff received from GEICO. (*Id.*)

Plaintiff claims that the repair estimate was too low because it was based on the cost of "aftermarket structural crash parts." (*Id.* ¶¶ 1, 44, 46.) While original equipment manufacturer ("OEM") parts are manufactured by the company that originally built the vehicle, "aftermarket," or "non-OEM," parts are manufactured by another company. (*Id.* ¶ 1, n.1.) "Structural crash parts" are vehicle components including bumpers, fenders, radiator supports, and bumper reinforcements. (*Id.* ¶¶ 1, 10.) According to Plaintiff, GEICO steers customers to body shops that base repair estimates on aftermarket parts. (*Id.* ¶¶ 14-16.) By using such estimates to pay claims, GEICO systematically fails to pay claimants "in amounts that . . . compensate them for the true cost to repair and restore their vehicles to 'pre-loss condition.'" (*Id.* ¶¶ 3, 13, 36.) Moreover, Plaintiff contends that GEICO "conceal[s] its estimating practices" such that claimants "have no way of knowing that they are in fact receiving aftermarket structural crash parts." (*Id.* ¶¶ 38-40, 45.)

Plaintiff contends that aftermarket structural crash parts are inferior to OEM structural crash parts "in terms of structural integrity, corrosion resistance, finish and appearance, fit, material composition, durability an[d] dent resistance. . . ." (*Id.* ¶¶ 2, 17.) Specifically, Plaintiff

contends that aftermarket parts are inferior because, *inter alia*, aftermarket parts are "reverse engineered" from OEM parts "without the benefit of the vehicle manufacturer's specifications." (*Id.* ¶ 18). Attached to the Complaint are several documents purporting to show the general inferiority of aftermarket car parts. (*Id.* ¶¶ 22, 25-33; Compl., Exs. A-F.)

On October 11, 2013, Plaintiff filed the instant action, seeking, *inter alia*, declaratory judgment, injunctive relief, and damages. Plaintiff asserts causes of action on behalf of himself and the putative class for: 1) breach of contract; 2) unfair and deceptive trade practices under the New York General Business Law; and 3) declaratory and injunctive relief. Defendants move to dismiss the complaint pursuant to Rule 12(b)(6), claiming that Plaintiff has failed to allege facts that plausibly support a claim against GEICO. (Mem. of Law on Behalf of Defs. in Supp. of their Mot. to Dismiss ("Defs.' Mem."), Doc. Entry No. 9.) Plaintiff opposes. (Pl.'s Mem.)

For the reasons set forth below, Defendants' motion is granted on the ground that the complaint fails to state a claim upon which relief may be granted.

## DISCUSSION

### I.    Legal Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007). The fact that the Plaintiff has asserted a putative class action does not affect the Court's analysis of the validity of the named Plaintiff's claims. *Patchen v. Gov't Employers Ins. Co.*, 759 F. Supp. 2d 241, 244 (E.D.N.Y. 2011).

## II.    Analysis

### A.    Breach of Contract

Plaintiff asserts a cause of action for breach of contract. The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach. *Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2012 WL 3929951, at *3 (E.D.N.Y. Sept. 10, 2012) (citing *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350 (2d Cir. 2005)). "A breach of contract claim will withstand a motion to dismiss only if plaintiff alleges the essential terms of the parties' purported contract in nonconclusory

language, including the specific provisions of the contract upon which liability is predicated." *Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013).

The parties do not dispute the existence of a contract. However, Defendants claim that Plaintiff has failed to allege the additional elements of a cause of action for breach of contract. Specifically, Defendants contend that Plaintiff has failed to plausibly state a claim for breach of contract because: 1) Plaintiff failed to comply with the Policy's requirements prior to bringing a lawsuit (Defs.'s Mem. at 7-9); 2) the Policy allows GEICO to use aftermarket crash parts in adjusting claims (Defs.' Mem. at 3-7); and 3) Plaintiff has failed to allege "actual or measurable damages to support a claim." (Defs.' Mem. at 15-16). For the reasons stated herein, the Court finds that the complaint fails to adequately plead that GEICO did not perform its obligations under the Policy.

### i. *Plaintiff's obligations prior to filing suit*

Defendants argue that Plaintiff has not performed his obligations under the Policy because he failed to: 1) notify GEICO that he disputed the claim adjustment prior to filing suit; and 2) participate in a loss appraisal prior to filing suit. (Defs.' Mem. at 7-9.) The Court declines to address these arguments because they would require the Court to make factual determinations, and, therefore, are inappropriate in the context of a motion to dismiss pursuant to Rule 12(b)(6).

### ii. *GEICO's use of non-OEM structural crash parts*

Defendants contend that Plaintiff has failed to allege adequately that GEICO did not perform its obligations under the Policy. The Policy provides, in relevant part, that GEICO "will pay for collision loss to the owned . . . auto for the amount of each loss less the applicable

deductible." (Policy[1] at 10, Doc. Entry No. 8-4.) The limit of GEICO's liability for loss "will

not exceed the cost to repair or replace the property, or any of its parts, with other of like kind

and quality . . . ." (*Id.* at 11.) The New York State Insurance Law ("Insurance Law")

supplements the Policy, providing, in relevant part: "(5) If the insurer's repair estimate is based

upon the use of any non-OEM crash part: . . . (iii) the crash part shall equal or exceed the

comparable OEM crash part in terms of fit, form, finish, quality and performance." N.Y. Comp.

Codes R. & Regs. tit. 11, § 216.7(b)(5).

The complaint does not assert plausibly that GEICO based the repair estimate for

Plaintiff's vehicle on non-OEM structural crash parts that: 1) were not of "like kind and

quality"; or 2) did not "equal or exceed the comparable OEM crash parts in terms of fit, form,

finish, quality, and performance." Indeed, the complaint suffers from the same deficiencies

identified by the court in *Patchen v. Gov't Employers Ins. Co.*, a case with facts almost identical

to this one. 759 F. Supp. 2d 241. Here, as in *Patchen*,

> Plaintiff[] allege[s] no facts about the condition of the non-OEM [structural] parts
> listed in [his] estimate, or about the manufacturers of those particular non-OEM
> parts. . . . Rather, the Plaintiff[] focus[es] solely on alleging facts that support the
> conclusion that *all* non-OEM [structural] parts are inferior, regardless of the part
> or the manufacturer.

*Patchen*, 759 F. Supp. 2d at 245-46. This Court is persuaded by the *Patchen* court's finding that

the type of allegations present in the complaint, including the documents attached to the

complaint, fail to allege facts showing that it is plausible that *all* non-OEM structural crash parts

are inferior to OEM parts. *Id.* at 247. Moreover, it is clear that the parties' agreement

"contemplated the specification of non-OEM crash parts for repairs," and, therefore,

"specification of non-OEM parts, by itself, cannot constitute a breach of the [contract]." *Id.* at

---

[1] Since the Policy is referenced in the complaint and relied upon by the Plaintiff, it may be considered by the Court
in deciding this motion. *See Roth*, 489 F. 3d at 509.

247 (quoting *Avery. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 296 (Ill. 2005)); *see id.* at 248 (finding that the Insurance Law "explicitly permit[s] and regulate[s] the specification of non-OEM crash parts in repair estimates"). (*See also* Policy at 11 (providing that GEICO may calculate its liability based on the cost of parts of "like kind and quality")).

Plaintiff argues that his claims are much narrower, and, therefore, more plausible than those presented in *Patchen*. (Pl.'s Mem. at 1-2.) Specifically, the plaintiffs in *Patchen* claimed that all aftermarket crash parts were inferior to OEM crash parts, while DiGangi claims that all aftermarket *structural* crash parts are inferior to OEM *structural* crash parts. However, this distinction does not alter the Court's analysis or cure the complaint's deficiencies. Neither the complaint nor the documents attached to the complaint, which purport to show that aftermarket parts are often inferior to OEM parts, address adequately the specific non-OEM structural parts specified in Plaintiff's repair estimate. Moreover, the Insurance Law does not distinguish between structural and other crash parts. *See* N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(a)(6) (defining a "crash part"). Nor has Plaintiff provided any rationale for distinguishing between structural crash parts and crash parts in general. In short, Plaintiff has failed to plausibly allege either that: 1) the non-OEM structural crash parts specified in his repair estimate were inferior to the comparable OEM parts, or 2) that aftermarket structural crash parts are universally inferior to OEM structural crash parts. Thus, Plaintiff's allegation that GEICO breached the Policy by specifying non-OEM structural crash parts in his repair estimate is insufficient to state a claim upon which relief may be granted.

Accordingly, Plaintiff has failed to plausibly allege non-performance under the Policy by GEICO, and, therefore, his claim for breach of contract must be dismissed.

*iii.* *Damages*

Defendants contend that Plaintiff has "failed to allege any actual or measurable damages to support a claim." (Defs.' Mem. at 15.) According to GEICO, "mere *specification* of non-OEM parts in [Plaintiff's] repair estimate and GEICO's subsequent issuance of a check, which included payment for same" is insufficient to survive a motion pursuant to Rule 12(b)(6). (*Id.* at 16 (citing *Avery*, 216 Ill. 2d at 148)). While the Court agrees that "mere specification" of non-OEM parts is likely insufficient to state a claim for damages, the Plaintiff's claim for damages in the amount of the "difference between the cost of a[n] OEM structural crash part and the cost of the inferior aftermarket structural crash parts listed on GEICO's repair estimate" (Compl. ¶ 66), constitutes a claim for damages that is not merely "speculative, possible, and imaginary." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007).

Accordingly, Plaintiff has properly asserted a claim for damages. Nonetheless, having found that Plaintiff has failed to plausibly allege non-performance by GEICO, Plaintiff's first cause of action is dismissed for failure to state a claim upon which relief may be granted.

**B. New York General Business Law**

Next, the complaint asserts a cause of action for violation of the New York General Business Law § 349, *et seq.* ("Section 349"). "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Kaplan, Inc. v. Yun*, 2014 WL 1689040, at *9 (S.D.N.Y. Apr. 30, 2014) (quoting N.Y. Gen. Bus. Law § 349(a)). To state a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). The first element of

a Section 349 claim "is of greatest import." *James v. Penguin Grp. (USA) Inc.*, 2014 WL
1407697, at *9 (S.D.N.Y. Apr. 11, 2014) (citing *City of New York v. Smokes–Spirits.com, Inc.*,
541 F.3d 425, 455 (2d Cir. 2008), *rev'd and remanded on other grounds by Hemi Grp., LLC, v.
City of New York*, 559 U.S. 1 (2010)).

Defendants contend that Plaintiff has failed to allege a claim under Section 349 because:
1) this matter involves a private contract rather than consumer oriented conduct; 2) Plaintiff has
not alleged with particularity any deceptive or misleading act by GEICO; and 3) Plaintiff has not
alleged any injury caused by the deceptive act. (Defs.' Mem. at 18-20.) For the reasons stated
herein, Plaintiff's claim for violation of Section 349 is dismissed for failure to state a claim upon
which relief may be granted.

### i. Consumer-Oriented Conduct

Defendants contend that the complaint alleges "nothing more than [a] private contractual
dispute[] that lack[s] the consumer impact necessary to state a claim under section 349." (Defs.'
Mem. at 18.) The scope of consumer oriented conduct is defined broadly. *James*, 2014 WL
1407697, at *9. To satisfy this element, a plaintiff must "demonstrate that the acts or practices
have a broader impact on consumers at large. Private contract disputes, unique to the parties . . .
would not fall within the ambit of the statute." *Id.* (quoting *Oswego Laborers' Local 214
Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995)).

Plaintiff has adequately pleaded that Defendants' conduct is consumer oriented. The
Policy at issue here is not "a complex, personalized insurance contract negotiated by
sophisticated parties." *James*, 2014 WL 1407697, at *9 (citing *New York Univ. v. Cont'l Ins.
Co.*, 87 N.Y.2d 308, 321 (1995)). Instead, Plaintiff's claims regard a standard agreement used by
other consumers. There is no indication that the Policy was negotiated by the parties or

9

significantly altered from a boilerplate form. Thus, Plaintiff's transaction with GEICO plausibly is indicative of a larger practice impacting consumers at large. Such transactions, in which a consumer receives standard forms and the parties occupy disparate bargaining positions have been held to be consumer oriented. *See Oswego*, 85 N.Y.2d at 26. The cases cited by Defendants are distinguishable. For example, in *PB Americas Inc. v. Cont'l Cas. Co.*, the court found that the plaintiff had failed to allege that the conduct at issue was consumer oriented because the transaction concerned "complex professional liability coverage"; the policy was "not a standard form used by other consumers," but a "carefully negotiated contract"; and the plaintiff was sophisticated party rather than an individual consumer susceptible to deceptive marketing practices". 690 F. Supp. 2d 242, 252 (S.D.N.Y. 2010).

Accordingly, Plaintiff has alleged plausibly that Defendants have engaged in consumer oriented conduct. The Court proceeds to consider whether Plaintiff has alleged that GEICO engaged in materially misleading conduct under Section 349.

### ii. *Misleading Conduct*

Defendants contend that Plaintiff has failed to allege that GEICO engaged in practices that were materially deceptive. "Deceptive practices are acts which are dishonest or misleading in a material respect. Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir. 2009). "[A] deceptive practice need not reach the level of common-law fraud to be actionable under section 349, and reliance is not an element of a Section 349 claim." *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 2007 WL 2288046, at *5 (E.D.N.Y. Aug. 8, 2007) (citing *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)) (internal quotations omitted).

Plaintiff alleges that GEICO mislead consumers by: 1) failing to inform consumers that its method of specifying aftermarket structural crash parts in estimates would lead to lower payments; 2) steering claimants to body shops that agreed to use GEICO's estimating methods; 3) specifying aftermarket structural crash parts that did not "equal or exceed" comparable OEM parts, in violation of the Insurance Law; 4) misrepresenting structural aftermarket crash parts as being "Quality Replacement Parts"; 5) failing to disclose the actual supplier or manufacturer of the specified aftermarket parts, and, instead, identifying entities that "merely transshipped the parts"; and 6) failing to inform claimants that the use of such parts would void manufacturer's warranties. (Compl. ¶¶ 2,12, 14-16, 34-35, 38-40.)

Plaintiff's allegation that GEICO failed to disclose material information about aftermarket parts used in adjusting claims is belied by the repair estimate attached to the complaint. The estimate clearly states, *inter alia*, that

> The preparation of this estimate may have been based on the use of crash parts supplied by a source other than the manufacturer of your motor vehicle.

(Compl., Ex. G at 6, 9);

> There are warranties applicable to these replacement parts[, which] are provided by the manufacturer and/or distributor of the parts rather than by the original manufacturer of your vehicle;

(*Id.*); and

> Non-Original Equipment Manufacturer aftermarket parts are described as AM, Qual Repl Parts, or Comp Repl Parts which stands for Competitive Replacement Parts.

(*Id.* at 6, 10.) Nor has Plaintiff plausibly alleged that aftermarket parts are inferior to OEM parts. (*See* Part II. A. i). Moreover, although steering consumers to captive body shops could be considered a materially deceptive practice, *See M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 2007 WL 2288046, at *6 (finding that the plaintiff's allegations of steering, along with other

11

misrepresentations, adequately pled deceptive practices by defendant insurance company); *see also Patchen*, 759 F. Supp. 2d at 249 (finding that the plaintiffs' allegation that GEICO "actively corralled claimants into 'captive' repair shops that would recommend substandard non-OEM replacement parts, while failing to inform claimants that non-OEM parts were inferior . . . is at least arguably . . . materially misleading"), Plaintiff has failed to allege that he was "steered" in any way to the body shop that prepared his repair estimate.

Accordingly, Plaintiff has failed to plausibly allege that Defendants engaged in materially deceptive practices.

### iii. Injury

Defendants contend that Plaintiff has not alleged any injury caused by GEICO's allegedly deceptive acts. "Although a monetary loss is a sufficient injury to satisfy the requirement under [Section] 349, that loss must be independent of the loss caused by the alleged breach of contract." *Spagnola*, 574 F.3d at 74. Here, Plaintiff contends that he was injured by GEICO's failure to compensate him "in an amount that would enable him to restore his vehicles to pre-loss condition." (Pl.'s Mem. at 23). Specifically, Plaintiff alleged that he suffered damages in the amount of the difference between the cost of the non-OEM structural crash parts specified in his repair estimate and the cost of the comparable OEM structural crash parts. (Compl. ¶ 66). This injury is not independent of the loss caused by the alleged breach of contract; rather, it arises out of "the exact causes and effects complained of in the . . . breach claim." *See Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 305-06 (S.D.N.Y. 2012) (holding that the plaintiff failed to state a claim for damages under Section 349 because the alleged damages "stem[med] from the alleged breach of contract"). Thus, the Court finds that Plaintiff has failed to state a claim for damages under Section 349.

In sum, the Court finds that Plaintiff has failed to plausibly allege that: 1) Defendants engaged in materially deceptive conduct, and 2) Plaintiff suffered injury as a result of the allegedly deceptive acts. Accordingly, Plaintiff's second cause of action for violation of Section 349 is dismissed.

## C.    Declaratory and Injunctive Relief

Plaintiff seeks "a judgment declaring that GEICO must restore Plaintiff's and putative class members' damaged vehicles to pre-loss condition using OEM structural crash parts or parts of like kind and quality of OEM structural crash parts." (Compl. ¶ 80.) Plaintiff also seeks "injunctive relief enjoining GEICO from using aftermarket structural crash parts unless the aftermarket structural crash parts are of like kind and quality as to OEM structural crash parts because they equal or exceed the comparable OEM structural crash parts in terms of structural integrity, corrosion, resistance, finish and appearance, fit, material composition, durability, and dent resistance . . . ." (*Id.* ¶ 81.) Since under New York law GEICO is obligated to specify crash parts that "equal or exceed the comparable OEM crash part in terms of fit, form, finish, quality and performance," N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(b)(5), Plaintiff "essentially asks the Court to repeat this statutory directive." *Patchen*, 759 F. Supp. 2d at 250.

The Court declines to issue a declaratory judgment, since doing so would not finalize the controversy between the parties, clarify the legal issues involved, or serve any other useful purpose. *See New York Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006). Additionally, the Court dismisses Plaintiff's cause of action for injunctive relief, since he failed to state a claim for either breach of contract or a violation of Section 349. Accordingly, Plaintiff's third cause of action for declaratory judgment and injunctive relief is dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in its entirety.

SO ORDERED.

Dated:  Brooklyn, New York
        July 22, 2014

_____/s/_____
DORA L. IRIZARRY
United States District Judge